


# Tarleton Integrated Resource Project

## Decision Notice

Tarleton Integrated Resource Project

U.S. Department of Agriculture, Forest Service

Pemigewasset Ranger District, White Mountain National Forest

Grafton County, New Hampshire

The Decision Notice incorporates all previous information in the Tarleton Integrated Resource Project Environmental Assessment and Finding of No Significant Impact (EA/FONSI), as well as information included in the project record.

## Decision and Rationale

I have decided to authorize the activities described in the "Purpose and Need" and "Proposed Action" sections of the project EA/FONSI, including modifications identified during environmental analysis and review of legal and regulatory compliance. The public will note their comments and concerns were considered throughout the analysis with alterations to the proposal from the first draft EA, the second draft EA, and to the final EA.

Under the proposed action, management actions for habitat, vegetation, and recreation management would occur within about 755 acres of management area (MA) 2.1- General Forest Management and MA 8.3- Appalachian National Scenic Trail (Appalachian Trail) lands. The project will advance forest plan goals and objectives by diversifying wildlife habitat and addressing other recreation and transportation management needs. Refer to the EA/FONSI for a complete project description. The proposed action is summarized below.

- Conduct silvicultural treatment over about 690 acres of management area 2.1 and management area 8.3 lands within the Tarleton habitat management unit (HMU).
- Reconfigure the Lake Katherine permanent wildlife opening to bring into Forest Plan compliance.
    - Establish a minimum 75-foot-wide forested buffer between Lake Katherine and the wildlife opening by foregoing maintenance in those areas and allowing natural revegetation to occur. White pine may also be planted within this buffer to hasten the establishment of desirable woody vegetation.
    - Retain an existing forested segment within the 63-acre area to create separation and establish two smaller openings on either side.
    - Re-establish portions of the openings by removing existing trees and saplings, including non-native Scots pine.
- Adopt an apple orchard on the northeast side of Charleston Road and expand from one to two acres.
- Distribute no more than ten Scots pine felled from the Lake Katherine wildlife opening along the Lake Katherine shoreline.
- Reconstruct about 1.5 miles of existing system and non-system roads.
- Add about 5 miles of unauthorized roads to the forest road system for future administrative use.
- Install up to ten gates at various points in the project area to enhance restriction of unauthorized vehicles.
- Adopt and redesign the Lake Katherine Boat Launch.
    - Create a boat launch designed for hand-launched watercraft (e.g., canoes, kayaks, paddleboards).




# Tarleton Integrated Resource Project

- Reconfigure the user-made parking lot to accommodate up to six vehicles, including space for a vehicle turn-around.
- Install barriers to restrict motorized vehicle access to portions of the site not designed for vehicle traffic.
- Install hardened surfacing (e.g. gravel, concrete) for parking lot, approach areas, and footpath from the parking area to the shoreline.
- Stabilize the shoreline with rock at the launch site as needed to control erosion.
- Install drainage features to manage site run-off.
- Install a site kiosk and other standard site signage.
- Install up to two picnic tables.

In arriving at this decision, I followed the standard process as outlined in Forest Service Manuals and Handbooks along with the National Environmental Policy Act (NEPA). In addition, I chose to exceed these requirements and released a second draft EA and opened a second public comment period based on feedback and to ensure the public felt they had an opportunity to comment and be heard throughout the process.

I was particularly moved with the dialogue at the public meeting and passionate comments during the second public comment period and appreciated the personal connection people have with this landscape. For example, the privately owned parcel of land surrounding Lake Tarleton became a grassroots effort to ensure the land would be conserved and protected from future development. With the support of the State of New Hampshire, congressional staff, partners, and the public, the Forest Service added these lands to its multiple use portfolio, conserving them for the enjoyment of future generations.

WMNF has managed lands in New Hampshire and Maine for over 100 years. The history of the Weeks Act and why the WMNF was established due to unsustainable timber activities prior to its creation is well known. Numerous over harvested landscapes came under the U.S. Forest Service's multiple use mission and these landscapes now thrive in a healthy, productive, and species diverse manner. These are the landscapes that are comprised of special places that are visited by approximately 6 million visitors annually, seeking nature and to be one with the land. This theme is also true for the lands around Lake Tarleton, where the private lands were heavily harvested, or liquidated, prior to federal acquisition.

The decision I am making in this document is based on and consistent with management decisions made when the parcels were acquired by the federal government. Timber harvest records prior to the parcels being transferred to federal ownership in 1998 are not available. Based on professional knowledge, the majority of the project area was heavily harvested prior to federal acquisition of the lands, and when determining future management of new acquisitions, the previous land use helps inform how these parcels would be managed moving forward. Additionally, as part of the Forest Plan revision process, the Tarleton lands were proposed to be managed under MA 2.1- General Forest Management, as well as MA 8.3- Appalachian National Scenic Trail (Appalachian Trail). Throughout the Forest Plan revision process there was extensive public input on how all WMNF lands would be managed at the habitat management unit levels. Ultimately, the Forest Plan revision received incredible support from the public, congressional staff, State of New Hampshire, and its numerous partners prior to the final decision was made.

After acquisition of the Tarleton lands, the WMNF allowed the landscape to grow and restock, this timeframe has brought it into silviculture alignment with treating landscapes every 20 to 30 years as part of the habitat and forest management cycle. It is now ready for active management to advance the Forest Plan's goals, objectives, and desired conditions for vegetation as a working forest.

Applicable forest plan standards and guidelines, national core and state best management practices, and project-specific design features identified by the interdisciplinary team will be implemented as part of the proposed action. A number of additional design features were also developed and incorporated into the final proposed action based on public input.

 

# Tarleton Integrated Resource Project

Questions about what the landscape would look post treatment was a frequent public comment. The activity units were designed to meet minimum scenery requirements, but also best minimize visuals while still balancing the purpose and need, which often resulted in exceeding minimum standards. Visual changes would be consistent with the historic patchwork of forest and openings indicative of the region. Due to the types of proposed treatments, unit design features, and 'light touch' approach, most of the changes that may be potentially visible in the area may be seen as color, shadows, lighting and textural changes on the landscape and not as bare ground. The scenery post-implementation would be similar to the WMNF's former Sebosis timber sale located on the hills across from the viewshed of Mt. Washington Resort, Mt. Washington and the adjacent Bretton Woods Ski Resort.

I have considered public comments received throughout the analysis and balanced them with the best available science in making this decision. Changes made to the EA based on public comments are bulleted below in the 'Summary of Public Invovlement' section. For example, increasing the no-cut buffer on the backside of Lake Tarleton resulted from comments regarding the dispersed recreation values for this area. Reducing the project's forestry activities by 21.5 percent and adjusting group selection harvest unit sizes are also changes made to the project based on reasonable public feedback. Every comment letter was also read, analyzed, considered, and recorded in the project record.

The Forest Service consulted with the U.S. Fish and Wildlife Service (USFWS) under section 7 of the Endangered Species Act on the northern long-eared bat in 2021. Initially, it was determined the Proposed Action would have no effects beyond those previously disclosed in the programmatic Biological Opinion (BO) on implementing the final 4(d) rule. However, on August 22, 2022, the Forest Service reinitiated consultation with the USFWS on the anticipated reclassification of the northern long-eared bat from threatened to endangered under the Endangered Species Act; this ruling went into effect on March 31, 2023 and the 4(d) rule was removed. An updated BO was received from the USFWS on March 31, 2023. The agency concurred with the Forest Service's determination that the project may affect, but is not likely to adversely affect, the northern long-eared bat. As this is a "may effect", but "not likely to adversely affect" determination, there are no reasonable or prudent measures to incorporate. Therefore, the action, as proposed, is in compliance with the Endangered Species Act.

An interdisciplinary team fully evaluated and disclosed the environmental effects of the proposed project based upon field study, resource inventory and survey, best available science applicable, and professional expertise. The project record demonstrates a thorough review of relevant scientific information and the consideration of opposing views.

I would like to thank those we heard from related to the project, both supportive and those who shared their concerns, and ask that they consider the reasons for this project with an open mind. No substantive alternatives were brought forward by the public that met the purpose and need, although the comments received were evaluated and the proposed action was continuously updated throughout the analysis based on public input. The final proposed action is a well-balanced consideration for the purpose and need and an incorporation of public input.

I considered the need for action and the issues identified during scoping in making my decision. I weighed the effects of the proposed action against taking no action. While taking no action would allow the natural successional processes to continue, it would not advance the goals and objectives of the forest plan for which I am charged to implement. Therefore, taking no action would not meet the need for the project. The proposed action will have minimal impact on the environment and will benefit multiple resources.

## Summary of Public Involvement

The project was first introduced to the public in October 2019 to seek their feedback. The conceptual project was published on the Forest Service's schedule of proposed actions (SOPA) in October 2019, and a proposal development open house was held in-person with the public on November 21, 2019. Presentations were also given to the Warren and Piermont Board of Selectmen in August and September 2019 on the developing proposal.

 

# Tarleton Integrated Resource Project

In January 2020 WMNF initiated a scoping comment period for the Tarleton Project. A notice of the availability of the scoping newsletter and request for comments was sent to about 500 parties. Based on public input gathered during this initial comment period, and additional interdisciplinary review, we modified the scope of the proposed project. In May 2021, Forest Service staff conducted a field visit with the National Grid power company to the powerline corridor they own within the project area. In July 2021, we initiated the formal 30-day comment period on the draft EA and preliminary FONSI for the project. A notice of the availability of the draft EA/FONSI was published in the New Hampshire Union Leader newspaper. In addition, a notice of this comment period was sent to over 650 parties and visitations to the Piermont and Warren Board of Selectmen were conducted. On July 14, 2021, WMNF held a virtual public meeting to provide an overview of the project and assist the public with the commenting process. This virtual public meeting also included an open question-and-answer session with public. On November 3, 2021 WMNF responded to a request from the Lake Tarleton Association to present the project and scenery analysis at Kingswood Camp for Boys. At the offering of the Forest Service, on December 14, 2021 and WMNF conducted field visits with members of the public. On April 11, 2022, WMNF held a project information session with the New Hampshire Congressional Staffers about the project. Following public input and delayed interest in the project, on April 12, 2022, I decided to exceed standard practices by initiating a second formal 30-day comment period on the updated and released second Draft EA and preliminary FONSI for the project. A notice of availability was published in the Valley News newspaper. In addition, notices of this comment period were sent to over 600 parties. At their request, WMNF visited the project area with the Society for the Protection of New Hampshire Forests on May 13, 2022. At their invitation, the Forest Service met with the Lake Tarleton Association in person on July 13, 2022, for additional conversations on the proposed project. On August 3, 2022, WMNF presented the project and explained the public involvement timeline at the request of the Lake Armington Association. Additional meetings with members of the Lake Tarleton Coalition occurred November 10, 2022, and December 6, 2022, to discuss the proposed project. WMNF staff met with the Appalachian Trail Conservancy (ATC) in February 2020 to discuss the potential impacts to the Appalachian Trail due to proposed project activities. The Appalachian Trail Conservancy commented several times throughout the NEPA process and submitted a letter of support during the objection period. In July 2023 WMNF staff reached out to Dartmouth Outing Club requesting their feedback on effects on the Appalachian Trail. No response has been received as of November 2023.

Since December 2019, WMNF has received 604 unique comment letters, all of which have been reviewed by the project team and are saved in the project record.

Public comments have been considered and many adjustments are reflected in the final proposed project. These changes based on public feedback and internal review include:

- Group selection harvest units, maximum group size has been reduced from two to one acre per group
- More clarifications on herbicides previously approved on WMNF and methodology on application was included
- A design feature was established to retain white pine at Lake Katherine to preserve potential bald eagle habitat up to 100 feet from the shoreline
- Additional detail was added to the scenery effects analysis in Chapter 3
- Added a design feature for a sensitive plant species in the design features table
- Better defined the foreground for the Appalachian Trail from Route 25C trailhead to the Wachipauka Pond trail junction
- A consequence of no action section was added
- A no-cut buffer along Lake Tarleton was extended from minimum state and federal requirements to 300 feet based on feedback regarding dispersed recreation values for this area

 

# Tarleton Integrated Resource Project

- Additional information related to the section 303(d) Clean Water Act related to impaired waters and basal area removal for pertinent watersheds was explained
- Added additional information related to the current condition of the existing road network
- Added additional information related to the current recreational use at Lake Katherine
- Reduced forestry activities by 21.5% or from occurring on 880 acres to 690 acres based on public input

Changes made due to the anticipated reclassification of bats:

- Added additional information related to the changing in listing status for the northern long-eared and tri-colored bats

A list of agencies, organizations and persons consulted regarding this proposal is also provided in the "Agencies and Persons Consulted" section of the EA/FONSI.

## Findings Required by Other Laws and Regulations

My decision complies with other law, regulation, and policy applicable to the proposal as documented in the environmental assessment ("Environmental Impacts" section) and finding of no significant impact.

## Implementation

Pursuant to regulations found at 36 CFR 218.12, the responsible official may not sign the decision notice until the reviewing officer has responded in writing to all pending objections. If no objections are received, the responsible official may sign the decision notice five (5) business days after expiration of the opportunity to object. Implementation may begin immediately after the decision notice is signed. Implementation of the project is expected to begin in summer 2024.

## Administrative Review and Objection Opportunities

This decision was subject to the pre-decisional objection process pursuant to 36 CFR 218, subparts A and B. Only individuals or organizations who submitted timely and specific written comments (section 218.2) about this project during designated opportunities for public comment are eligible to file an objection in accordance with section 218.5. Issues raised in objections must be based on previously submitted timely, specific written comments regarding the proposed project unless based on new information arising after designated comment opportunities (section 218.8(c)). The burden is on the objector to demonstrate compliance with this requirement for objection issues. The objection must contain the minimum content requirements specified in section 218.8(d). Incorporation of documents by reference is permitted only as provided in section 218.8(b).

The opportunity to object ends 45 days following the date of publication of the legal notice in the newspaper of record, the New Hampshire Union Leader. Written objections must be postmarked or received during this time period. The publication date in the newspaper of record is the exclusive means for calculating the time to file an objection, and those wishing to object should not rely upon dates or timeframe information provided by any other source. The 45-day period is computed using calendar days, including Saturdays, Sundays, and federal holidays. When the period expires on a Saturday, Sunday, or federal holiday, the time is extended to the end of the next federal working day. The regulations prohibit extending the length of the comment period. It is the objector's responsibility to ensure timely filing of a written objection with the reviewing officer. All objections are available for public inspection during and after the objection process. Names and contact information submitted with objections will become part of the public record and may be released under the Freedom of Information Act. A legal notice was published in the Manchester Union Leader on March 16, 2023. The objection period ended on May 1, 2023. Nineteen objections were received, of which seventeen objectors had standing. The reviewing officer, WMNF Forest Supervisor Derek Ibarguen held an objection resolution meeting on June 28, 2023, where twelve objectors participated. The reviewing officer issued an objection response letter on

 

# Tarleton Integrated Resource Project

September 27, 2023. All instructions issued by the reviewing officer in his objection response letter have been addressed.

## Contact

For additional information concerning this decision, contact Brooke Brown, District Ranger, by email at brooke.brown@usda.gov or by phone at 603-536-6101. For more information regarding the environmental analysis process, please contact Scott Hall, NEPA Planner, by email at scott.hall@usda.gov or by phone at 603-536-6226.

Thank you for your interest in the management of the White Mountain National Forest.

---

Brooke M. Brown

Pemigewasset District Ranger