# Exhibit A

**DECLARATION OF ZACK PORTER ON BEHALF OF STANDING TREES**

1. I, Zack Porter, am over the age of 18, and I am competent to testify to all facts contained in this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am providing this declaration in support of Plaintiff Standing Trees.

3. Standing Trees is a grassroots membership organization with more than 3,000 members and supporters in the New England region and beyond.

4. I co-founded Standing Trees and have served as executive director since 2021.

5. I have dedicated my career to protecting public lands and waters. I have degrees in Geography and Wilderness Studies from the University of Montana, where I studied forest ecology, natural resource conflict resolution, and public land policy, planning, and management. I began my professional career in 2004 with the US Forest Service, where I worked for three seasons as a Forestry Technician/Wilderness Ranger on two National Forests. From 2008 to 2018, I served in a variety of capacities with the Montana Wilderness Association, including as a board member, NexGen Wilderness Leaders Program Director, and Western Montana Field Director, positions in which I leveraged my expertise in public land policy and management and community organizing to influence Congressional legislation and decision-making by the US Forest Service. During my time at Montana Wilderness Association, I participated in conservation collaboratives including the Blackfoot-Clearwater Stewardship Project and the Southwestern Crown Collaborative, a part of the congressionally-created Collaborative Forest Landscape Restoration Program. While serving in these collaboratives, I worked closely with the Forest Service to protect imperiled wildlands and wildlife, support the regional wood products industry, and guide National Forest timber harvests and landscape restoration activities

to ecologically appropriate locations for the benefit of fish and wildlife habitat, and to reduce community vulnerability to wildfire. The Forest Service recognized my commitment and partnership with a Regional Forester's Award and a Wilderness Legacy Award. Additionally, I was selected to serve as a panelist for Forest Service Chief Tom Tidwell's five-year performance review of Forest Service Region One. After moving back to New England in 2018, I worked for Northeast Wilderness Trust, a regional land trust, and Conservation Law Foundation, a regional public interest and environmental law non-profit, before co-founding Standing Trees in 2020 and becoming its first Executive Director in 2021.

6. The purpose of Standing Trees is to protect and restore New England's native ecosystems and safeguard the interests of its supporters and members. Standing Trees works to protect and restore forests on New England's public lands, with a focus on New Hampshire and Vermont. Consistent with its purpose, Standing Trees advocates just and equitable policies and practices for managing public lands, thereby promoting clean water, clean air, forest health, public health, and unfragmented habitat in the region. This includes monitoring the development of forest management plans and timber sales to ensure the lawful and scientifically-supported management of public lands.

7. Standing Trees and its members rely on the open government provisions of the National Environmental Policy Act (NEPA). In particular, public disclosure of pending environmental reviews under NEPA enables Standing Trees to learn about proposed federal actions in New England that impact water quality, air quality, forest health, public health, and intact habitat in the region. Standing Trees actively participates in these environmental reviews by submitting comments and objections on project documents and attending public meetings—all to ensure that information on environmental impacts is publicly disclosed, that state and

federal agencies rely on the best available science, and that agency decision-making is lawful and in the public interest. The comments and objections that Standing Trees submits usually contain proposed alternatives to plans that will reduce negative impacts to the environment and protect and restore high-functioning ecosystems. Therefore, to develop well-informed and site-specific alternatives, Standing Trees relies on detailed information provided in project documentation.

8. Standing Trees has been involved with the Tarleton Integrated Resource Project (Tarleton project) since attending a presentation about the project by White Mountain National Forest staff at Kingswood Camp on Lake Tarleton on November 3, 2021. Standing Trees submitted its first comment on the project's draft environmental assessment in May, 2022. AR 10739-10793. Numerous current Standing Trees members submitted comments and objections in their individual capacities, as well.

9. Members of Standing Trees live adjacent to or near the Tarleton project site and fear the Tarleton project will negatively impact their community as well as the wildlife, plant life, water, and other resources within the project area. Similarly, these members reasonably expect that the Tarleton project will impact their businesses, property values, and recreational, aesthetic, and spiritual interests in the land and water in or adjacent to the project area.

10. As Standing Trees' Executive Director I have investigated the impacts of proposed timber harvests in the Tarleton project area: I hiked along the historic Charleston Road on May 22, 2023; I paddled Lake Tarleton on April 23, 2022 to experience its serenity, exceptional water quality, and healthy population of loons and warblers; and I climbed Piermont Mountain with the co-owner of Kingswood Camp on May 25, 2023 to assess impacts to scenery. Since November 2021, I have visited with impacted business owners, local residents, and

3

concerned citizens on multiple occasions, many of whom were involved in the campaign to purchase and transfer the land surrounding Lake Tarleton to the White Mountain National Forest. These individuals, including Standing Trees members, feel betrayed by the Forest Service for breaking promises to their community and violating expectations set by the 2005 WMNF Forest Plan.

11. According to the October 17, 2001 edition of the Bradford Journal Opinion, "Under the motto 'Less is More,' the [Lake Tarleton conservation] plan as presented by [Trust for Public Land representative Rodger] Krussman 'will protect and conserve the "wilderness" quality of the Lake Tarleton area,' stressing low impact recreational activities." AR 9481. At a meeting of the Lake Armington Association that was also reported on by the Bradford Journal Opinion, "guest speaker . . . John Serfass, district ranger of the US Forest Service . . . addressed the concerns of Armington residents regarding logging activities that have taken place on Piermont Mountain overlooking the lake . . . He assured the members of the association that the Forest Service has no plans to harvest timber from land it owns in the Lakes Tarleton and Armington area." AR 9483. In the 2005 Forest Plan final environmental impact statement, the Forest Service declared that "public participation will be an important part of the process we use for making site-specific management decisions" at Lake Tarleton, specifically. *See* 2005 WMNF Forest Plan EIS, Appendix A-Public Involvement at A-235. AR 3626, 6180, 13077. Nevertheless, I believe the Forest Service failed to ensure that public participation was an "important part of the process" for the Tarleton project. *Id*.

12. On May 1, 2023, Standing Trees submitted a detailed objection to the Tarleton project, highlighting, among other things, the importance of preserving interior, mature forest to protect clean water, sequester and store carbon, and provide healthy, unfragmented forest habitat,

including for endangered species. AR 13065-130. This objection, submitted together with the Lake Tarleton Coalition by Vermont Law and Graduate School's Environmental Advocacy Clinic, detailed the numerous NEPA violations that the Forest Service committed in releasing a finding of no significant impact. Additionally, the objection detailed the Forest Service's violation of the National Forest Management Act (NFMA). *Id*.

13. Similarly, Standing Trees has actively participated in the public process for the Peabody West Integrated Resource Project (Peabody West project) since the summer of 2022, submitting its first comment on the Peabody West project's draft environmental assessment on September 6, 2022. AR 4679-4717.

14. Members of Standing Trees who recreate in and around the project area fear that the Peabody West project will irrevocably impact the wildlife, plant life, and water resources within the project area. These members reasonably expect that the Peabody West project will preclude their ability to recreate in and around the project area. These members also reasonably expect that their aesthetic and spiritual enjoyment of this unique landscape at the foot of the Presidential Range will be harmed by the noisy and destructive qualities of logging.

15. Standing Trees submitted a detailed objection to the Peabody West project, highlighting, among other things, the importance of preserving mature forests to maximize the benefits of carbon sequestration and storage, preventing impacts to water quality, protecting important habitat for endangered species and other fish and wildlife, avoiding impacts to the Great Gulf Wilderness and adjoining Inventoried Roadless Area (IRA), and refraining from causing disruption or degradation of recreational resources in the Presidential Range, where the Peabody West project is proposed to take place. This objection, submitted by the Vermont Law and Graduate School's Environmental Advocacy Clinic, detailed the numerous NEPA violations

that the Forest Service committed in releasing a finding of no significant impact. Additionally, the objection detailed the Forest Service's violation of NFMA.

16. Standing Trees is concerned that the Forest Service's misleading use of language regarding different styles of silviculture impedes meaningful public participation and understanding of the Forest Service's plans, which harms Standing Trees' and its members ability to engage in the NEPA process. For example, several different styles of silviculture other than what the Service denotes as "clear-cuts" involve the extensive removal of trees in single cut.

17. As Standing Trees' Executive Director, I visited Unit 72 in the Peabody West project on September 29, 2024 after learning from the Administrative Record that Unit 72 has an estimated stand year of origin of 1860, AR 7834, and contains late successional forest with no evidence of past harvests. AR 6285-89. Neither of the Habitat Management Unit Rationale documents, AR 12344; 9278, acknowledge the presence of forests in the "old" age class, as it is defined by the 2005 WMNF Forest Plan Appendix D, Age Class Definitions by Habitat Type. Consequently, I was surprised to learn in their respective Administrative Records that multiple stands or units in both project areas meet or exceed the threshold for the "old forest" age class. A careful inspection of Peabody West project Unit 72 revealed what appeared to be old forest habitat, and possibly old-growth forest. Timber harvest is prohibited in old forest habitat, *see* 2005 WMNF Forest Plan: Abbreviations, Acronyms, and Glossary at 21; AR 3595, and in old-growth forest, *see* 2005 WMNF Forest Plan Chapter 2, Forest-Wide Management Direction at 2-13; AR 3415-3426. However, thirty-four acres of Unit 72 are proposed for "single tree selection and group selection," AR 4910, including cuts up to two acres in size. AR 4884. Other harvest units that meet or exceed the threshold for the "old forest" age class are proposed for timber harvest in both projects.

18.     Standing Trees is also concerned about logging's impacts on the Great Gulf IRA, cultural resources, and water quality, particularly near the Peabody River. Standing Trees is troubled that the Forest Service overlooked the potential effects on the future wilderness evaluation of the Great Gulf IRA, and on the eligibility for federal wild and scenic designation of the two eligible river segments within the project area.

19.     The authorization of the Tarleton and Peabody West projects will cause harm to Standing Trees' interests in protecting the climate, water quality, endangered and otherwise sensitive species, scenic integrity in the White Mountain National Forest, and recreational and other resources.

20.     Many of Standing Trees' members and supporters regularly visit the White Mountain National Forest, including the Tarleton and Peabody West project areas, where they enjoy hiking, wildlife watching, boating, swimming, and other activities that will be harmed by the Forest Service's approved management actions. Some of Standing Trees' members and supporters live or operate businesses within or adjacent to the project areas and, as mentioned, will be harmed by the projects.

21.     Standing Trees asserts that the Forest Service's decision to approve these two projects violate NEPA and NFMA. Specifically, Standing Trees and its members are concerned that the Forest Service failed to consider any alternatives, take a requisite "hard look" at impacts to a range of resources, calculate cumulative impacts, or comply with the 2005 White Mountain National Forest Plan (Forest Plan). Moreover, Standing Trees asserts the Service's finding of no significant impact is arbitrary without proper treatment of the failures mentioned above.

22.     Standing Trees and its members have been harmed by the Forest Service's decisions to approve these two projects because the Forest Service did not consider alternatives,

take the requisite "hard look" at impacts to a range of resources, calculate cumulative impacts, or comply with the Forest Plan to make a lawful finding of no significant impact.

23. Additionally, Standing Trees and its members are being harmed because the Forest Service has not provided Standing Trees nor its members the necessary information to make fully informed decisions and engage in informed advocacy efforts.

24. Standing Trees relies on the public involvement aspect of the NEPA process to engage in administrative decisions and to influence decisions that would affect it and its members.

25. Standing Trees is actively involved in the NEPA process for several additional Forest Service projects being proposed in Vermont and New Hampshire. Standing Trees plans to continue its involvement in these projects, many of which demonstrate a replication by the Forest Service of the same legal violations at issue in the Tarleton and Peabody West projects.

26. Standing Trees and its members, therefore, will suffer concrete and particularized injuries that are imminent now that the Tarleton and Peabody West projects have been authorized.

27. The injury to Standing Trees and its members would be redressed by an order from this Court vacating the final Decision Notices and enjoining the defendants from proceeding with the projects until the Forest Service has complied with the National Environmental Policy Act, National Forest Management Act, and Administrative Procedure Act.

28. I swear, under penalty of perjury, that the foregoing is true and correct.

Executed on this 3rd of October, 2024:

*[signature]*

Zack Porter

Executive Director, Standing Trees