## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

STANDING TREES, INC.,

       Plaintiff,

   v.

UNITED STATES FOREST SERVICE, *et al.*,

     Defendants.

Case No. 1:24-cv-00138-JL-TSM

## DEFENDANTS' REPLY IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT [DN 16]

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................. 2

       A.     The alternatives analyses satisfy NEPA ................................................. 2

              1.     Forest Service regulation 36 C.F.R. § 220.7(b)(2)(ii) allows the
                     agency to document consideration of the no-action alternative in the
                     effects analysis .......................................................................... 2

              2.     Plaintiff's suggested alternatives do not meet the Projects' purpose
                     and need ...................................................................................... 4

       B.     The Forest Service evaluated the Projects' environmental effects and
              satisfied NEPA's rule of reason ........................................................... 6

              1.     The Forest Service reasonably evaluated direct and indirect effects .......... 7

                     a.     The Project-specific water quality analyses apply established
                            methodology ...................................................................... 7

                     b.     The Project-specific biological evaluations examine impacts
                            to the northern long-eared bat ............................................ 8

                     c.     The EAs and specialist reports analyzed impacts to scenery
                            and recreation ................................................................... 10

                     d.     The Forest Service analyzed impacts to forest health and
                            disclosed its reliance on stand data ..................................... 12

              2.     The Projects reasonably evaluate cumulative impacts to climate ............ 15

       C.     The Projects comply with the Forest Plan and satisfy NFMA ............................ 17

III.   CONCLUSION ............................................................................................. 20

## I.    **INTRODUCTION**

In compliance with the National Environmental Policy Act (NEPA), the Forest Service prepared robust Environmental Assessments (EAs) to consider and disclose the environmental effects of the Peabody West Integrated Resource Project (Peabody) and the Tarleton Integrated Resource Project (Tarleton). Over more than four years, the Forest Service provided ample opportunities for public participation and comment, including field trips, site visits, open houses, receipt and consideration of written comments and objections, and meetings with interested stakeholders. The EAs support the Forest Service's Findings of No Significant Impact (FONSIs) and document how the two Projects comply with the Forest Plan, as required by the National Forest Management Act (NFMA). The Projects include several actions, including commercial and non-commercial vegetation treatments, wildlife habitat improvements, and recreational enhancements. In addition to many individual members of the public, the Projects are strongly supported by the State of New Hampshire and diverse interest groups. DN 22 (State of New Hampshire's amicus brief), DN 25 (organizational and individual's amicus brief).

Plaintiff seeks to impede these important Projects through claims brought under NEPA and NFMA. As explained in Defendants' opening brief and this reply, none of Plaintiff's claims have merit. Applying the Administrative Procedure Act's (APA) deferential standard of review and the rule of reason, the Court should find that Plaintiff has not met its burden to show the Projects are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The EAs, FONSIs, and supporting documents in the Administrative Record demonstrate that the Forest Service reasonably explained its decisions and that the Projects comply with the Forest Plan. The Court should grant summary judgment to the Forest Service on all claims.

## II.    ARGUMENT

### A.    The alternatives analyses satisfy NEPA.

For both Projects, the Forest Service analyzed in detail the proposed action and included in the effects analysis a no action alternative to contrast the effects of the proposed action. The Forest Service provided a brief explanation for why Plaintiff's proposed alternatives did not meet the Projects' purpose and need. The alternatives analyses satisfy NEPA's requirement for EAs to consider a reasonable range of alternatives. Defs.' Mem. in Supp. of Cross-Mot. for Summ. J. 8-14, DN 16-1 (Defs.' Mem.). Plaintiff fails to meet its burden to show that the alternatives analyses are arbitrary and capricious because Plaintiff does not address the relevant regulation and does not show that its proposed alternatives satisfy the Projects' purpose and need. *See* Pl.'s Reply in Supp. for Summ. J. and Opp'n to Defs.' Cross-Mot. 1-7, DN 27 (Pl.'s Resp.).

    1.    Forest Service regulation 36 C.F.R. § 220.7(b)(2)(ii) allows the agency to document consideration of the no-action alternative in the effects analysis.

The Forest Service's NEPA regulations say, "[t]he EA shall briefly describe the proposed action and alternative(s) that meet the need for action. No specific number of alternatives is required or prescribed." 36 C.F.R. § 220.7(b)(2) (2024). In an EA, the Forest Service may "document consideration of a no-action alternative through the effects analysis by contrasting the impacts of the proposed action and any alternative(s) with the current condition and expected future condition if the proposed action were not implemented." 36 C.F.R. § 220.7(b)(2)(ii). Here, the Forest Service relied on subsection (b)(2)(ii) to document consideration of the no-action alternative. Defs.' Mem. 9-10, 13-14 (discussing 36 C.F.R. § 220.7(b)(2)(ii) and NEPA Procedures, 73 Fed. Reg. 43084-01, 43,092 (July 24, 2008)); AR4897, 11975.

Plaintiff claims, citing 36 C.F.R. § 220.7(b)(2)(i), that the Forest Service can only proceed without consideration of additional alternatives when there are no unresolved conflicts.

Pl.'s Resp. 2. But subsection (b)(2)(i) does not apply because the Forest Service documented consideration of a no-action alternative through the effects analysis as expressly allowed by subsection (b)(2)(ii). Defs.' Mem. 9-10, 13-14. Plaintiff does not address subsection (b)(2)(ii) at all, and thus waived any argument that the Forest Service's analyses of the proposed actions with a comparative no action baseline is arbitrary and capricious. *Furtado v. Oberg*, 949 F.3d 56, 59 (1st Cir. 2020) ("Our caselaw also makes clear that we may treat a party's failure on appeal to respond to a properly raised argument for summary judgment as waiver.").

Plaintiff faults Defendants because "the Service has not cited a single case affirming" its use of subsection (b)(2)(ii). Pl.'s Resp. 4. But as noted in Defendants' brief, this claim appears to be an issue of first impression. Defs.' Mem. 13 at n.8. The lack of case law in support of Defendants' decision to rely on 36 C.F.R. § 220.7(b)(2)(ii) to document the no-action alternative does not meet Plaintiff's burden under the APA to show that such a decision or reliance is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with applicable law." 5 U.S.C. § 706(2)(A); *Sierra Club v. Wagner*, 581 F. Supp. 2d 246, 254-55 (D.N.H. 2008) ("[T]he sole question presented [in an APA case] is legal in nature: whether plaintiffs have carried their burden of proof…."). The Forest Service relied on an established regulation to document consideration of a no-action alternative, and explained this exercise of discretion in the EAs and response to comments and objections. Defs.' Mem. 10 (citing AR4897, 11975) (EAs); *id.* 13-14 (citing AR6107 (objection response #1), 12904 (objection response #6), 10551 (response to comment #23)). Relying on subsection (b)(2)(ii) was not arbitrary and capricious.

Plaintiff's attempt to factually distinguish this case and two circuit court cases lacks merit. Pl.' Resp. 6-7 (citing *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054 (9th Cir. 2023) and *Utah Env't Cong. v. Bosworth*, 439 F.3d 1184 (10th Cir. 2006)). Both cases provide

*Defendants' Reply*                                                                                      3

persuasive authority that a Forest Service's EA satisfies NEPA when it considers only two alternatives – action and no action. *Earth Island Inst.*, 87 F.4th at 1065; *Utah Env't Cong.*, 439 F.3d at 1195. Both cases are also consistent with binding precedent that "the process of studying alternatives is not endless." *Seacoast Anti-Pollution League v. Nuclear Reg. Com'n*, 598 F.2d 1221, 1230 (1st Cir. 1979); *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978) ("Common sense also teaches us that the 'detailed statement of alternatives' cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man.").

    2.   <u>Plaintiff's suggested alternatives do not meet the Projects' purpose and need.</u>

NEPA only requires an agency to examine "reasonable" alternatives (40 C.F.R. §§ 1502.14(a), 1508.9(b)). An agency need not consider alternatives which are "infeasible, ineffective, or inconsistent with the basic policy objectives" for the management of the area. *Lovgren v. Locke*, 701 F.3d 20, 37 (1st Cir. 2012). While Plaintiff suggested other alternatives, the Forest Service briefly explained that none met the Projects' goals for vegetation, wildlife, and other resources and thus were not reasonable. Defs.' Mem. 9-12; *see also* AR4845, 6107, 10553. The brief explanations satisfy NEPA; the Forest Service was not required to respond to Plaintiff's alternatives in detail. 40 C.F.R. § 1502.14(a); *Lovgren*, 701 F.3d at 37.

Plaintiff claims the Forest Service mischaracterizes its alternatives as "opposing all logging" and that it "propose[d] a different, less extensive set of silvicultural treatments." Pl.'s Resp. 4. But Plaintiff's comments show that it does in fact oppose timber harvest, and – despite their voluminous nature – the comments do not provide any detail for what kind or amount of timber harvest Plaintiff would find acceptable. AR4683 (stating, "[t]he sheer number of different silviculture prescriptions for the proposed action demonstrates that even if logging is needed –

which Standing Trees asserts it is not – there is a wide variability in how the logging can achieve

desired conditions."); AR13082 (asking the Service to "omit[] the unnecessary harvest and

treatment activities included in the current proposed action."). Plaintiff's comments objecting to

timber harvest and vaguely asking the Forest Service to do something else does not meet its

burden to identify a reasonable, unexamined alternative. *Vt. Yankee*, 435 U.S. at 553-54

("[A]dministrative proceedings should not be a game or a forum to engage in unjustified

obstructionism by making cryptic and obscure reference to matters that 'ought to be' considered

and then, after failing to do more to bring the matter to the agency's attention, seeking to have

that agency determination vacated on the ground that the agency failed to consider matters

'forcefully presented.'"); *Seacoast Anti-Pollution League*, 598 F.2d at 1230-31.

Even if Plaintiff had provided any detail for what it considers "unnecessary" timber

harvest, it still has not shown how a pared-down alternative with less timber harvest satisfies the

Projects' need to address age class objectives for Forest Plan Management Area (MA) 2.1 lands

(General Forest Management).[1] The Forest Plan identifies the desired percentage of age class

(regeneration, young, mature) by habitat type (Northern hardwood, Mixedwood, Spruce-Fir,

Aspen-Birch) on lands suitable for timber harvest in MA 2.1. AR3434. The Forest Plan explicitly

notes that "[t]he regeneration age class can be created immediately through even-aged harvest,

making this a short-term objective that should be met during the first decade of implementation."

*Id.* Additionally, age class composition can only be adjusted through timber harvest. Defs.'

Mem. 10-11 (citing AR12904, 12353-55, 17911-13). Plaintiff's response discusses only wildlife

habitat, and does not explain how its vague alternative would meet the age class objectives

---

[1] "Age class" is "[a] distinct aggregation of trees originating from a single natural disturbance or regeneration cutting." AR3577.

required in MA 2.1. Pl.'s Resp. 4-6; *see* AR3434 (Table 1-04, Age Class Objectives for MA 2.1). Nor does Plaintiff acknowledge the fact that wildlife diversity depends on healthy and varied habitat conditions – including areas with regeneration age class timber stands. AR3434; *see also* AR4029, 12276 (studies on regeneration harvest and wildlife in the northeast).

Plaintiff complains that the Forest Service did not respond to its "extensive scientific data" it claims advance Forest Plan goals by promoting resilience to environmental and climate risks. Pl.'s Resp. 4-5 (citing AR13105). Even if Plaintiff articulated how its dozens of studies support its preferred alternative (they do not, *see* AR13105), forest resilience is only part of the Projects' purpose and need and does not address the need to adjust age class. Additionally, the Forest Service need not provide a "point-by-point response" to all issues raised in an objection, 36 C.F.R. § 218.11(b)(1), and NEPA's requirement to address "responsible opposing view[s]" applies to environmental impact statements (EISs), not EAs. 40 C.F.R. § 1502.10(b); *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1020 (9th Cir. 2012).

The Forest Service satisfied its procedural requirement to consider a reasonable range of alternatives. It was not required to consider either a stand-alone, no-action alternative or Plaintiff's alternatives in greater detail. Under the APA's narrow standard of review, the Court should grant summary judgment for Defendants on Claim One. *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009).

## B.    The Forest Service evaluated the Projects' environmental effects and satisfied NEPA's rule of reason.

The EAs and supporting documents examined the Projects' effects to water quality, the northern long eared bat, scenery and recreation, forest health, and climate. The Forest Service provided a reasonably thorough analysis and informed the public of the basis for its decisions. Defs.' Mem. 14-30. Plaintiff's myriad complaints baselessly attack the Forest Service's

methodology and fly-speck the environmental analyses, but do not show that the decisions are arbitrary and capricious. *See* Pl.'s Resp. 7-18.

    1.   <u>The Forest Service reasonably evaluated direct and indirect effects.</u>

        a.   <u>The Project-specific water quality analyses apply established methodology.</u>

The Forest Service conducted Project-specific analyses of impacts to water quality. Defs.' Mem. 15-17; *see also* AR4900, 11987-88 (water quality analyses in the EAs). These analyses applied the Forest's percent basal removal methodology developed in the Albany South EA that both Projects incorporate by reference. AR4900, 11987-88; *see* AR2331-49 (Albany South EA), AR6369-437 (Albany South Water Resources Report); *see also* AR1-2 (flow charts showing steps of basal area calculation). The Project-specific analyses support the determination that there will be no measurable adverse effects to water quality. AR4900, 11988, 13750.

Plaintiff suggests the Forest Service took an impermissible "short cut" by relying on the methodology developed in the Albany South EA. *Id.* 10-11. Incorporation by reference is not an impermissible "short cut"; it is expressly allowed by NEPA's implementing regulations. 40 C.F.R. § 1502.21; *Jones v. Nat'l Marine Fisheries Serv.*, 741 F.3d 989, 998 (9th Cir. 2013). The Albany South Water Resources Report and EA analyzed the effects of timber harvest on water quality and quantity, and found that percent basal area removal is the key indicator for whether a project has adverse effects on water quality. AR2331, 6382. The Albany South Water Resources Report also explains in detail the importance of riparian buffers (such as those planned for the Projects) and the role the region's dominant soil type has on mitigating impacts to water quality. AR6385-88. The two Projects challenged here examined the percent basal area removed by authorized timber harvest, applied the methodology, and reasonably determined there would be no measurable adverse effects. AR4900, 11988, 13750.

While Plaintiff may want more information about species, water temperature, stream connectivity, and a host of other items, the percent basal area removal methodology is not arbitrary and capricious. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."); *Advocs. for Transp. Alts., Inc. v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 2d 289, 304 (D. Mass. 2006) ("[T]he Court grants substantial deference to the agency's choices regarding methodology and technical analyses" (citing *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1446 (1st Cir. 1992))).

      b.   <u>The Project-specific biological evaluations examine impacts to the northern long-eared bat.</u>

The Project-specific biological evaluations (BEs), EAs, and consultation with the Fish and Wildlife Service (FWS) satisfy the Forest Service's obligations to analyze effects to northern long-eared bat. Defs.' Mem. 18-19; *Nantucket Res. Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 100 F.4th 1, 21 (1st Cir. 2024); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 650 (9th Cir. 2014).

Plaintiff responds that the Forest Service "did not conduct a thorough investigation of its own." Pl.'s Resp. 12. But it did, in the Project-specific BEs prepared by the Forest Service. AR9238-58 (Peabody BE), 13915-61 (Tarlton BE). If Plaintiff's argument is that the BEs are not "thorough enough" because the BEs assume the presence of the bat, that argument is merely a disagreement with methodology and does not establish a NEPA violation. *Marsh*, 490 U.S. at 378; *Town of Winthrop v. FAA*, 535 F.3d 1, 13 (1st Cir. 2008) ("[a]gencies are entitled to select their own methodology as long as that methodology is reasonable. The reviewing court must

give deference to that decision.") (citation omitted). And, of course, assuming bats are present is a far more conservative approach than surveying for bats that may not be found.

Plaintiff then complains that the BEs are arbitrary because they contain no measures to protect bats. Even if true (it's not), this substantive complaint fails to establish a NEPA violation. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) ("If the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs."); *Historic Bridge Found. v. Buttigieg*, 22 F.4th 275, 280 (1st Cir. 2022) ("NEPA does not mandate any specific outcome; it only requires agencies to conduct environmental studies.").

Plaintiff's statement that there are no measures to protect bats is not true because both Projects apply Forest Plan standards and guidelines for wildlife (including wildlife reserve trees) and regional bat conservation measures. AR9244 (Peabody BE), 13923 (Tarleton BE); *see* AR3309 (conservation measures from FWS's Biological Opinion), 3470-71 (Forest Plan, Wildlife Reserve Trees S-1, S-2 and G-1 through G-4). The wildlife reserve tree standards and guidelines ensure that abundant roost trees remain within treated stands. Plaintiff's complaint about a *de minimis* loss of roosting habitat overlooks the fact that even if any individual roost trees are removed, ample roosting habitat remains after treatment in both the Project areas and across the Forest. AR9243, 13923-24. Plaintiff also ignores the fact that the treatments *improve* foraging habitat because bats forage over open areas and along physical land features. AR9244, 13924. Given the protective measures, ample roosting habitat, and improved foraging habitat, the Court should reject Plaintiff's challenge based on complaints about the bat. *WildEarth Guardians v. Conner*, 920 F.3d 1245, 1259 (10th Cir. 2019) ("In light of those conservation measures and the low likelihood of [lynx analysis units] having insufficient denning habitat to

begin with, the Service did not need to quantify denning habitat to conclude that the Project will not adversely affect lynx."); *WildWest Inst. v. Bull*, 547 F.3d 1162, 1176 (9th Cir. 2008) (rejecting NEPA challenge because there "would likely be a negligible reduction, if a reduction at all, in habitat suitability" and "treatments may actually improve or create foraging habitat.").

    c.   The EAs and specialist reports analyzed impacts to scenery and recreation.

The Forest Service prepared scenery and recreation specialist reports for each Project and summarized the findings in the EAs. Defs.' Mem. 19-22; *see* AR4887-88, 4897-98, 6462-64, 6498-506 (Peabody); AR11983, 11988-89, 13793-80, 13826-50 (Tarleton). These analyses, informed by the Forest Service's viewpoint modeling methodology and design features that reduce impacts, satisfy the agency's duty to analyze impacts and make an informed decision.

Plaintiff largely retreats from its main argument about viewpoints, and merely restates – with no legal support – its disagreement with the Forest Service's decision not to include a floating viewpoint on Lake Tarleton. The Forest Service's methodology and selection of viewpoints is reasonable, well-informed, and entitled to deference. *Marsh*, 490 U.S. at 378.

Plaintiff repeats its complaints about the format of information for effects to the Great Gulf Trail. Pl.'s Resp. 13-14. The Forest Service disclosed relevant information and is not required to present information in a particular way or in Plaintiff's preferred format. Defs.' Mem. 20-21 (citing AR4892-95, 17908); *Citizens for Clean Air & Clean Water in Brazoria Cty. v. U.S. Dep't of Transp.*, 98 F.4th 178, 192 (5th Cir. 2024) ("[B]ecause Petitioners here fail to show how the agency's formatting decisions affect the substance of the decision reached, any challenge to the [environmental analysis's] format is meritless.") (cleaned up); *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1112 (9th Cir. 2015) ("Agencies…have discretion in deciding how to organize and present information in environmental assessments.") (cleaned up).

Plaintiff's complaints about the effects of Peabody's vegetation treatments on Appalachian Trail scenery and recreational baselines are barred by the doctrine of administrative exhaustion. Defs.' Mem. 21-22 (citing 36 C.F.R. §§ 218.8(c), 218.10(a)(3); AR6113 (objection response ## 8, 9)). Plaintiff cites three pages of its comments on the Peabody draft EA. Pl.'s Resp. 14 (citing 4692-94). But these comments (1) do not mention the Appalachian Trail and (2) are about the Projects' recreational improvements, not the effects of timber harvest on recreation. *See* AR4691-93 (Plaintiff's comment on scenery), 4693-94 (commenting that "recreation proposals are unsupported" by the Forest Plan). Nowhere does Plaintiff raise the claims it now pursues in litigation. The claims are thus barred. *Ark Initiative v. U.S. Forest Serv.*, 660 F.3d 1256, 1261 (10th Cir. 2011) ("Parties must exhaust available administrative remedies before the Forest Service prior to bringing their grievances to federal court. The claim must have been presented in sufficient detail to allow the agency to rectify the alleged violation.") (cleaned up).

Plaintiff argues the Court should excuse its failure to exhaust because the Forest Service had independent knowledge of the issues. Pl.'s Mem. 14-15. Plaintiff's cases do not support this argument. First, neither case addresses the Forest Service's administrative exhaustion requirements promulgated in 2013. *Friends of the Clearwater v. Dombeck* has nothing to do with exhaustion; it is a case about whether an agency must supplement a NEPA analysis when new information arises after a decision. 222 F.3d 552, 559 (9th Cir. 2000). And *Department of Transportation v. Public Citizen* addresses the general duty to raise issues in the public comment process; it does not address the obligation to comply with a regulatorily required administrative exhaustion process. 541 U.S. 752, 765 (2004). Second, even if *Public Citizen* applied to administrative exhaustion, its exception for flaws that may be "so obvious" that a commenter need not point them out to preserve a challenge does not help Plaintiff here. *See Public Citizen*,

541 U.S. at 765. Plaintiff's complaints about scenic impacts to the Appalachian Trail and recreation baselines are a quarrel over the degree to which the agency addressed those impacts, not a failure to address the impacts entirely. *League of Wilderness Defs.-Blue Mountains Biodiversity Proj. v. Bosworth*, 383 F. Supp. 2d 1285, 1296-97 (D. Or. 2005) (rejecting "so obvious" exception by reasoning that "[w]hen the argument is one of degree, rather than an outright failure to address, the plaintiff must raise that argument during the comment period or be precluded from litigating it at a later date").

Plaintiff failed to meet its burden to show that its objections about the Appalachian Trail and recreation are based on previously submitted public written comments, and thus failed to show that it satisfied regulatory requirements for administrative exhaustion. 36 C.F.R. §§ 218.8(c), 218.10(a)(3); *Earth Island Inst.*, 87 F.4th at 1064; *Massachusetts v. United States*, 522 F.3d 115, 132 (1st Cir. 2008).

> d.    The Forest Service analyzed impacts to forest health and disclosed its reliance on stand data.

The EAs and supporting documents analyze the Projects' impacts on forest health. Defs.' Mem. 22-25; *see* AR4877-85, 12344-57, 11973-82, 17906-18. The Forest Service disclosed the information it relied on and made that information available to the public.

Plaintiff continues to claim that the Projects "will destroy old forest age class and stands with old forest habitat." Pl.'s Resp. 8. Defendants challenged this unfounded assertion, noting "Plaintiff does not identify any stands it thinks both have these attributes and authorized timber harvest, nor explain how any limited harvest within such a stand would necessarily impact old growth." Defs.' Mem. 24. Plaintiff responds that old growth or old forest habitat "stands 71, 72, and 75 are within the boundaries of cutting units 72 and 74" in Peabody. Pl.'s Resp. 9 (citing AR6289 and 4895). But Plaintiff misinterprets both the Botany Survey Summary and list of units

*Defendants' Reply*                                                                 12

where treatments are authorized. The Botany Survey Summary cites both "Compartment" and "Stand" identifiers. Compartment 34 contains Stands 71, 72 and 75. AR6289. The stand table for Peabody assigns a sequential "Stand Identification" number to identify which compartments and stands from the Botany Survey Summary have authorized timber harvest. AR7834-35. The "Stand ID" column in the stand table does not correspond to the compartment and stand identifier from the Botany Survey Summary. The Peabody stand table does not list Compartment 34 Stands 71, 72 or 75, so these stands are not identified for treatment:

| 70 | 00034 | 3 |
| 71 | 00034 | 41 |
| 72 | 00034 | 4 |
| 73 | 00034 | 20 |
| 74 | 00034 | 6 |
| 75 | 00035 | 23 |

AR7835 (excerpt from Peabody stand table, showing that the Stand Identification number (left column) does not correspond to the compartment and stand identifiers from the Botany Survey Summary (center and right columns)); *see id*. (for full list). Had Plaintiff raised this concern with the Forest Service earlier (and outside of litigation), the Forest Service could have cleared up Plaintiff's apparent confusion.

Plaintiff claims the botanist's email is a "post-hoc rationalization" because "it is dated June 26, 2023, two months after the Service authorized the Peabody project." Pl.'s Resp. 10 (citing email at AR4527-29). Plaintiff mistakenly believes the April 27, 2023 Peabody EA (AR4876-912) authorized the Project. It did not. The EA analyzes and discloses the environmental effects of a proposed action. 36 C.F.R. § 220.7(b)(3). The February 7, 2024 Decision Notice (AR4867-69) documents the decision to proceed with an action and is the final agency action subject to judicial review under the APA. *Id*. § 220.7(c); 5 U.S.C. § 551(13)

*Defendants' Reply*                                                                                              13

(defining "agency action"); *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (identifying prongs for final agency action); *All. for the Wild Rockies v. Gassmann*, CV-21-105-M-DLC-KLD, 2022 WL 20287353, at *11 (D. Mont. Sept. 30, 2022) (stating the "Project Decision Notice constitutes final agency action for purposes of the APA."). The June 2023 email pre-dates the February 2024 Decision Notice and is not post-hoc or post-decisional.

In addition, Plaintiff argues that the Peabody objection response "admits eight cutting units overlap with 524 acres of old forest." Pl.'s Resp. 9. This argument is meritless because it confuses the analysis in the Habitat Management Unit (HMU) Rationale, under which "mature" and "old" age classes are categorized together for purposes of evaluating habitat conditions and objectives, with the Forest Plan's definition of old forest habitat and old growth forest. *Compare* AR12654-12655 (HMU reference document) *with* AR3595 (Forest Plan definition). The Forest Plan uses qualitative definitions that account for forest structure, not just age. AR3595. Under the Forest Plan's definitions, no old growth or old forest habitat will be harvested.

Despite ample opportunity to do so, Plaintiff still identifies no specific old growth or old forest stands that are authorized for treatment, while the Forest Service's environmental documents establish the opposite. AR6116, 4880. Plaintiff has not met its burden to support its assertions that the Forest Service is harvesting timber in old forest or old growth habitat. *Friends of Rapid River v. Probert*, 427 F. Supp. 3d 1239, 1258-59 (D. Idaho 2019) (rejecting NEPA challenge because "Plaintiffs have not cited any information, authority, or studies illustrating that the Forest Service's stand exam information (old or new) is erroneous or unreliable.").

Plaintiff also continues to peddle its argument that the Forest Service withheld information about stand data from the public. This assertion is false and frivolous. Both the draft and final EAs clearly identified the HMU Rationales, and those Rationales identify stand surveys

as one of the sources the Forest used to assess forest health. Defs.' Mem. 23 (citing AR4803-04, 4877-78, 11815, 11973-74, 12350, 17910). The Forest Service satisfied its NEPA obligations to inform the public how the agency analyzed forest health. 40 C.F.R. § 1501.21; *Jones*, 741 F.3d at 998; *Friends of the Clearwater v. Petrick*, 588 F. Supp. 3d 1071, 1097 (D. Idaho 2022) ("The Forest Service was not impeding agency or public review because the documents were available for inspection."). Anyone who was interested in more detailed information about stand data was informed of the data during the comment period and could have requested it from the Forest Service. That Plaintiff did not ask for the information during the comment period – but instead waited a year to submit a FOIA request – is not the Forest Service's fault and does not meet Plaintiff's burden to show the stand data information was unavailable to the public.

    2.    <u>The Projects reasonably evaluate cumulative impacts to climate.</u>

The Forest Service reasonably analyzed the Projects' negligible effect on greenhouse gas emissions. Defs.' Mem. 26-27 (citing AR5678-703 (Forest-wide carbon assessment); 6322-27, 13259-65 (Project-level carbon assessments); 4900, 11987 (EAs). In the context of global climate change, these analyses satisfy NEPA's requirement to discuss impacts from forest management projects "in proportion to their significance." 40 C.F.R. § 1502.2(b); *Hapner v. Tidwell*, 621 F.3d 1239, 1242, 1245 (9th Cir. 2010); *Swomley v. Schroyer*, 484 F. Supp. 3d 970, 975-77 (D. Colo. 2020) *aff'd*, No. 20-1335, 2021 WL 4810161 (10th Cir. Oct. 15, 2021).

Plaintiff fails to show that the Forest Service's analyses are arbitrary and capricious. First, it fails to acknowledge the quantitative Forest-wide and qualitative Project-level carbon assessments that the EAs incorporate by reference. *See* Pl.'s Resp. 15-18. The Forest-wide and Project-level assessments disclose potential impacts and provide a detailed and reasoned basis to support the Forest Service's finding that the Projects' impacts on greenhouse gas emissions and

*Defendants' Reply*                                                                                                    15

global climate change are negligible. AR6323, 13260. Importantly, the Project-level assessments found that after treatment, the remaining and new trees that grow in the healthier forest will sequester more carbon than if left untreated. AR6324, 13262.

Plaintiff also fails to acknowledge the principal of aggregation, under which an agency may "characterize the cumulative effects of past actions in the aggregate without enumerating every past project that has affected an area." *Ctr. for Env't Law & Pol'y v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1007 (9th Cir. 2011); *see* 36 C.F.R. § 220.4(g) (cataloging past actions is not required). The Forest-wide and Project-level carbon assessments aggregate the effects of past projects, so Plaintiff's allegation that the Forest Service refused to consider the cumulative effects of other projects is baseless. Defs.' Mem. 27 (discussing aggregation).

Plaintiff wrongly claims that the Forest Service must quantify greenhouse gas emissions. "[Q]uantified data in a cumulative effects analysis is not a per se requirement." *Ctr. for Comm. Action & Env't Just. v. FAA*, 18 F.4th 592, 605 (9th Cir. 2021). Plaintiff continues to rely on a single case from the District of Montana and does not respond to Defendants' case law showing that the Montana case contradicts binding precedent and is an outlier among cases addressing the carbon analysis in other forest management projects. Defs. Mem. 28 (citing *Hapner*, 621 F.3d at 1242, 1245; *Swomley*, 484 F. Supp. 3d at 975-77; *League of Wilderness Defs. v. Connaughton*, No. 3:12-cv-2271-HZ, 2014 WL 6977611, at *26-27 (D. Or. Dec. 9, 2014)).

Finally, Plaintiff claims the Forest Service "arbitrarily bypasses two critical pieces of guidance." Pl.'s Resp. 17. The first is the 2023 Council on Environmental Quality (CEQ) interim guidance, but the Forest Service was not required to apply the interim guidance because the NEPA process for the Projects was already underway. Defs.' Mem. 29; *see* AR489, 4085, 9741. The second is the Forest Service's July 2022 Climate Adaption Plan, which Plaintiff mentions

for the first time in its reply and should not be considered by the Court. *Sullivan v. Neiman Marcus Grp., Inc.*, 358 F.3d 110, 114 n.1 (1st Cir. 2004) (issues not raised in an opening brief on appeal are waived). Even if the Court were to consider this new argument, it fails to show the Projects' analysis of climate impacts is arbitrary and capricious. The passage cited by Plaintiff addresses old-growth and mature forests (AR733), but no treatments are proposed in old forest or old growth habitats on either of the Projects. AR4880, 12919; *see* Part II.B.1.d, *supra*.

In sum, none of Plaintiff's challenges to the Projects' analysis of direct, indirect, or cumulative effects have any merit. The Forest Service conducted a reasonable analysis of effects in proportion to their significance. 40 C.F.R. § 1502.2(b); *Balt. Gas & Elec. v. Nat. Res. Def. Council*, 462 U.S. 87, 97 (1983). That Plaintiff disagrees with the Forest Service's analysis on any of these issues "is not a basis for deeming it invalid. The NEPA ensures that an informed decision is made, not that the decision is satisfactory to all those affected by it." *Lovgren*, 701 F.3d at 38. The Court should grant summary judgment for Defendants on Claim Two.

**C.**    **The Projects comply with the Forest Plan and satisfy NFMA.**

The Forest Service's EAs and supporting documentation show that the Projects comply with the Forest Plan and thus comply with NFMA. Defs.' Mem. 32-35. Plaintiff's NFMA claims are either barred by the doctrines of waiver and administrative exhaustion or fail to meet Plaintiff's burden to show the Forest Service's decisions are arbitrary and capricious.

*First*, Plaintiff waived its NFMA arguments about stand data and scientific literature. Defs.' Mem. 32 n.13. Plaintiff responds that it "fully fleshed [the argument] out in the context of NEPA" and asserts "the same facts and argumentation support the NFMA claim…." Pl.'s Resp. 19. But the statutes are distinct; NEPA is procedural whereas NFMA is substantive. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998) ("NEPA, unlike the NFMA, simply

guarantees a particular procedure, not a particular result.").[2] Plaintiff's passing reference to prior

procedural NEPA arguments does not meet its burden to show that the Forest Service's

substantive decisions about Forest Plan compliance violate NFMA. *Lands Council v. McNair*,

537 F.3d 981, 994 (9th Cir. 2008) (en banc) ("[T]he Forest Service acts arbitrarily and

capriciously only when the record plainly demonstrates that the Forest Service made a clear error

in judgment in concluding that a project meets the requirements of the NFMA and relevant

Forest Plan."), *overruling on other grounds recognized by City of Los Angeles v. FAA*, 63 F.4th

835, 824 (9th Cir. 2023). Even if the Court were to reach the merits of this claim, there is no

NFMA violation because there is no timber harvest in old forest or old growth habitat in either of

the Projects. AR4880, 12919; *see* Part II.B.1.d, *supra*.

     *Second*, the Forest Service provided a rational explanation for modifying MA 2.1

Guideline 3, which generally limits visible openings to three to four acres in "high" scenic

integrity areas. Defs.' Mem. 32-33. Plaintiff provides no support for its new argument that scenic

integrity standards are somehow paramount to other Forest and Project-level objectives, such as

moving towards desired conditions for vegetation, wildlife, and other resources.[3] Additionally,

the Forest Service has a statutory mandate to "provide for multiple use and sustained yield" of

forest resources. 16 U.S.C. § 1604(e). While Plaintiff may be dissatisfied with the Forest

Service's reason to modify Guideline 3, it is not arbitrary and capricious and is entitled to

deference. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1035 (9th Cir. 2020)

---

[2] At least one district court has been reversed for conflating NEPA and NFMA claims. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002) ("Because the [NEPA and NFMA] counts are based on different statutes and seek to enforce different duties of the Forest Service, the district court abused its discretion in striking the counts as redundant.").

[3] Plaintiff does not respond to Defendants' argument that design elements distribute temporary openings in units 19 and 20 across the landscape. Defs.' Resp. 33 (citing AR4891 (SCM-1).

(courts "give the Forest Service ample latitude in ensuring the consistency of its actions with Forest Plans....").

*Third*, Plaintiff failed to exhaust its administrative remedies for its claim about the Projects' compliance with Forest Plan standards for two rivers eligible for designation as Wild and Scenic Rivers because it did not raise this issue in scoping or any other designated opportunity for public comment. Defs.' Mem. 33 (citing 36 C.F.R. §§ 218.8(c), 218.10(a)(3). In response, Plaintiff selects a phrase from one of its comments about a no action alternative. Pl.'s Mem. 19-20 (citing AR4684). Not only does the selected phrase fail to mention the key term "wild and scenic river," it says nothing about compliance with the Forest Plan and is about NEPA, not NFMA. Plaintiff bears the burden to demonstrate compliance with the Forest Service's regulations for administrative exhaustion. 36 C.F.R. § 218.8(c). It failed.

Plaintiff then asserts the claim is not exhausted because the Forest Service had independent knowledge of the issue. Pl.'s Mem. 20. As noted in Part II.B.1.c *supra*, the same cases Plaintiff cites here about a "so obvious" exception do not apply. Additionally, the Forest Service did not ignore Forest Plan standards for eligible Wild and Scenic Rivers. The Forest Service analyzed impacts to the two eligible rivers and determined that Project activities would not result in irreversible or irretrievable changes that could affect potential designation. AR4902-03 and AR4903 (Table 7).

*Fourth*, Plaintiff continues to claim that "assumption of the bat's presence does not satisfy its Forest Plan obligations." Pl.'s Resp. 20. But Plaintiff cites no Forest Plan "obligations" that support its view, and doubles down on its erroneous interpretation that the Forest Service must conduct bat surveys. *Id.* The Forest Plan requirement to conduct surveys only applies to certain *plant* species. Defs.' Mem. 33-34; AR3448 (citing Rare and Unique Features Standard 1).

Bats are not plants, so the survey requirement does not apply. The Court should defer to the Forest Service's reasonable interpretation of the investigation required by Standard 1. *Or. Nat. Desert Ass'n.*, 957 F.3d at 1035.

The Projects comply with all Forest Plan requirements, including those raised in this lawsuit. The Court should grant summary judgment for Defendants on Claim Four.[4]

### III.   <u>CONCLUSION</u>

Plaintiff has not met its burden to show that the Peabody or Tarleton Projects are arbitrary and capricious. The Projects satisfy the Forest Service's multiple-use mandate and will create a more diverse, healthier, and more sustainable Forest for present and future generations. The Court should grant summary judgment for Defendants on all claims and deny Plaintiff's motion for summary judgment in its entirety.[5]

Respectfully submitted,

Dated:  December 12, 2024.            TODD KIM
                                      Assistant Attorney General
                                      Environment and Natural Resources Division
                                      United States Department of Justice

                                      */s/  John P. Tustin*

---

[4] Plaintiff waived its challenge to the FONSIs because it provided no legal argument in its opening brief in support of Claim Three. Defs.' Mem. 30-32. Plaintiff's single paragraph catch-all response both fails to show it preserved the claim and fails to show the Forest Service's consideration of the context and ten intensity factors was arbitrary and capricious. Pl.'s Resp. 18. The Court should grant judgment for Defendants on Claim Three.

[5] Plaintiff's response continues to ask the Court to vacate the Projects' decisions, but still provides no analysis and cites no binding precedent. Pl.'s Resp. 20 n.12. In the First Circuit, whether to vacate agency decisions "rests in the sound discretion of the reviewing court; and it depends *inter alia* on the severity of the errors, the likelihood that they can be mended without altering the order, and on the balance of equities and public interest considerations." *Cent. Maine Power Co. v. FERC*, 252 F.3d 34, 49 (1st Cir. 2001). Unless or until a specific violation is established, it will not be clear what a reasonable remedy might be.

Texas Bar No. 24056458
Senior Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:    (202) 305-3022
Fax:        (202) 305-0275
john.tustin@usdoj.gov

JANE E. YOUNG
United States Attorney

## **TABLE OF ACRONYMS**

| APA | Administrative Procedure Act |
|---|---|
| CEQ | Council on Environmental Quality |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| ESA | Endangered Species Act |
| FONSI | Finding of No Significant Impact |
| FWS | Fish & Wildlife Service |
| HMU | Habitat Management Unit |
| NFMA | National Forest Management Act |
| NEPA | National Environmental Policy Act |
| TES | Threatened, Endangered, Sensitive |